**UNITED STATES of America, Plaintiff,**

v.

**Sally A. PAPIA et al., Defendants.**

**No. 75–CR–84.**

United States District Court, E. D. Wisconsin.

March 30, 1976.

William J. Mulligan, U.S. Atty., by Thomas E. Brown, David B. Bukey and Leah M. Lampone, Asst. U.S. Attys., Milwaukee, Wis., for plaintiff.

Franklyn M. Gimbel, Milwaukee, Wis., for defendant Papia.

Gerald P. Boyle and James H. Schaefer, Milwaukee, Wis., for defendant Enea.

Thomas P. Doherty, Milwaukee, Wis., for defendant Adonnis.

Joseph P. Balistrieri, Milwaukee, Wis., for defendant Basile.

John H. Lauerman, Milwaukee, Wis., for defendant Holland.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

Defendants in this action, Sally A. Papia, Russell J. Enea, Maxmillion J. Adonnis, and Joseph V. Basile (hereinafter

"defendants") were convicted, following a jury trial, of offenses more fully described below. The case is presently before the Court on defendants' post-trial motions. Each of these defendants has moved, pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure,[1] for an order setting aside the jury verdict returned in this case and entering a judgment of acquittal. In the alternative, each defendant has also moved, pursuant to Rule 33 of the Federal Rules of Criminal Procedure,[2] for a new trial. Since the grounds set forth in support of these motions differ among the defendants, each defendant's position will be considered individually below.

For the reasons which will be given, the Court finds that all of defendants' motions are without merit and must be denied.

## HISTORY OF THE ACTION

On April 22, 1975, the grand jury returned a three-count indictment in this case. Count I charged the four defendants whose motions are the subject of this decision and order, along with one James R. Jennaro and one Herbert H. Holland, with conspiring among themselves and with others to use extortionate means to collect an extension of credit, in violation of 18 U.S.C. § 894. The defendant Holland entered a plea of guilty to this charge before trial. Count II charged only the defendants Papia and Jennaro with violating 18 U.S.C.

§ 1951, the Hobbs Act. Count III charged the defendants Papia and Jennaro with a substantive violation of 18 U.S.C. § 894.

The case was tried to a sequestered jury over approximately one month. At the close of all the evidence, the Court entered a directed judgment of acquittal for Jennaro on all counts and ordered Count II of the indictment to be stricken with respect to the defendant Papia. The jury ultimately returned verdicts finding defendants Enea, Basile, and Adonnis guilty as to Count I (the conspiracy count), and finding defendant Papia not guilty as to Count I but guilty as to Count III. The instant motions followed. The Court has had the benefit of the briefs and arguments of counsel in rendering its decision.

## DEFENDANT PAPIA

The defendant Papia has advanced several arguments in support of her position that her conviction under Count III must be set aside.

 Initially it is urged that the evidence adduced at trial was insufficient as a matter of law to sustain a guilty verdict. In ruling on this claim, the well-settled rule that "all doubts as to credibility must be resolved in favor of the government" must be applied. 8 Moore's Federal Practice ¶ 29.07, at 29–28 (2d ed. 1975). Applying this principle, the Court is convinced that the evidence adequately supports the verdict. Rich-

---

**1.** Rule 29(c) of the Federal Rules of Criminal Procedure provides:

"(c) *Motion After Discharge of Jury.* If the jury returns a verdict of guilty or is discharged without having returned a verdict, a motion for judgment of acquittal may be made or renewed within 7 days after the jury is discharged or within such further time as the court may fix during the 7-day period. If a verdict of guilty is returned the court may on such motion set aside the verdict and enter judgment of acquittal. If no verdict is returned the court may enter judgment of acquittal. It shall not be necessary to the making of such a motion that a similar motion has been made prior to the submission of the case to the jury."

**2.** Rule 33 of the Federal Rules of Criminal Procedure provides:

"The court on motion of a defendant may grant a new trial to him if required in the interest of justice. If trial was by the court without a jury the court on motion of a defendant for a new trial may vacate the judgment if entered, take additional testimony and direct the entry of a new judgment. A motion for a new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment, but if an appeal is pending the court may grant the motion only on remand of the case. A motion for a new trial based on any other grounds shall be made within 7 days after verdict or finding of guilty or within such further time as the court may fix during the 7-day period."

ard Schmitz, a government witness, testified to a conversation he had with the defendant on October 21, 1974, concerning an extension of credit she made to one Kurt Amidzich, Schmitz's business partner. During the course of the conversation, Schmitz testified that threats were made to him by defendant Papia which he understood to be genuine. Assuming, as I must, this testimony to be credible, it alone establishes a *prima facie* case of a violation of 18 U.S.C. § 894.[3] See *United States v. Amerino*, 495 F.2d 1159, 1164–1166 (7th Cir. 1974). Moreover, this evidence was corroborated by the independent testimony of Kurt Amidzich and Exhibit No. 34, a letter written by Amidzich to defendant Papia a short time after the October 21 conversation. Thus, the Court finds that the evidence was plainly sufficient to sustain the verdict of guilty.

More troublesome is the defendant's contention that her conviction of a substantive violation of 18 U.S.C. § 894 must be set aside where the jury acquitted her on a conspiracy count in the same trial. The essence of the defendant's argument is that testimony admitted into evidence under the coconspirator exception to the hearsay rule, Rule 801(d)(2)(E), Federal Rules of Evidence, which the jury found insufficient to support a verdict of guilty on Count I, impermissibly tainted the proceedings with respect to Count III. Rule 801(d)(2)(E) provides:

"(d) * * * A statement is not hearsay if—

\* \* \* \* \* \*

"(2) * * * The statement is offered against a party and is * * (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy."

Even independently considering the credibility of witnesses in considering defendant's position, instead of taking the evidence in a light most favorable to the Government, see 8 Moore's Federal Practice ¶ 29.09, at 29–29 (2d ed. 1975); *United States v. Robinson*, 71 F.Supp. 9, 10, 11 (D.D.C.1947), the defendant cannot prevail.

It is elemental that "inconsistent" verdicts on separate counts of an indictment will not automatically invalidate a conviction on fewer than all counts. *Dunn v. United States*, 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356, 358 (1932); *United States v. Greene*, 497 F.2d 1068, 1085–86 (7th Cir. 1974). Moreover, this rule has found specific application where convictions on substantive crimes have been accompanied by acquittals on conspiracy counts. In *United States v. Andrino*, 501 F.2d 1373, 1378 (9th Cir. 1974), the Court summarily rejected an argument that split jury verdicts on multiple § 894 counts could not be sustained. And in *United States v. Herr*, 338 F.2d 607 (7th Cir. 1964), where the defendants argued that they were entitled to a new trial when the jury found them not guilty of conspiracy to defraud but found them guilty on other substantive counts, the Court disagreed, holding at 611:

"We are unimpressed by defendants' argument that it is reasonable to assume that the jury's verdict was based on the accumulation of evidence introduced, much of it under the guise of proving a conspiracy, and not on the evidence introduced to support the substantive counts of the indictment."

This ruling disposes of defendant Papia's argument here that her acquittal on the conspiracy count requires that a new trial be granted on the substantive count. Although it is true that consider-

---

3. Section 894, 18 U.S.C., provides in relevant part:

"(a) Whoever knowingly participates in any way, or conspires to do so, in the use of any extortionate means

"(1) to collect or attempt to collect any extension of credit, or

"(2) to punish any person for the nonrepayment thereof,

shall be fined not more than $10,000 or imprisoned not more than 20 years, or both.

" \* \* \* "

able evidence was admitted against Papia under Rule 801(d)(2)(E), Federal Rules of Evidence, this testimony was accompanied by appropriate contemporaneous instructions to the jury which described the purpose and conditions under which the evidence was admitted. In view of the substantial independent testimony bearing on Count III, outlined above, and the ultimate verdict, this Court must conclude that the jury properly considered only that evidence applicable to each separate count of the indictment. See *Opper v. United States*, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954). Moreover, allowing such verdicts may actually be of considerable benefit to a criminal defendant in a given case. As Judge Friendly has pointed out:

> " * * * The very fact that the jury may have acquitted of one or more counts in a multi-count indictment because of a belief that the counts on which it was convicted will provide sufficient punishment [citation omitted] forbids allowing the acquittal to upset or even to affect the simultaneous conviction. * * * Indeed, if the rule were otherwise, the Government would be entitled to have the jury warned that an acquittal on some counts might undermine a guilty verdict on others—almost the opposite of the standard instruction, which is obviously beneficial to criminal defendants * * *. * * * [A]llowing inconsistent verdicts in criminal trials runs the risk that an occasional conviction may have been the result of compromise. But the advantage of leaving the jury free to exercise its historic power of lenity has been correctly thought to outweigh that danger. (Citation omitted.)" *United States v. Carbone*, 378 F.2d 420, 422–423 (2nd Cir. 1967).

The Court recognizes that acquittal on the conspiracy charge in this case makes necessary an inquiry into the possible prejudice that may have resulted to the defendant by reason of hearsay evidence admitted at trial under the coconspirator exception to the hearsay rule. In this connection the defendant relies heavily on the opinion in *United States v. Lucido*, 486 F.2d 868 (6th Cir. 1973), to support her position. In *Lucido* the defendant was granted a new trial on a substantive count after having been acquitted by a jury on a conspiracy count. The factual basis for the *Lucido* holding is, however, significantly distinguishable from the instant case. As the circuit court made clear, the Government's *entire* case against Lucido on both the substantive and conspiracy counts consisted of hearsay evidence circumstantial in nature. 486 F.2d 868, 869–870 at notes 1 and 4. Thus, the Court held that since insufficient *independent* evidence was introduced to establish a *prima facie* case of conspiracy or joint venture, it was error to admit the hearsay testimony, and "[s]ince such testimony is the basic element in the circumstantial evidence against Lucido, its prejudicial effect on the substantive charge is unmistakable." 486 F.2d at 869–870. That this is the import of the holding in *Lucido* is made clear by subsequent cases decided by the same court. These decisions use *Lucido* as authority for the proposition that substantial independent evidence of conspiracy and joint venture is required before hearsay testimony becomes admissible under Rule 801(d)(2)(E). *United States v. Townes*, 512 F.2d 1057, 1058 (6th Cir. 1975), cert. denied, *Towns v. United States*, 423 U.S. 846, 96 S.Ct. 84, 46 L.Ed. 2d 67 (1976); *United States v. Craig*, 522 F.2d 29, 31 (6th Cir. 1975). As discussed earlier, this case contained substantial *independent* evidence from which the jury could have concluded that defendant was guilty of the offense charged in Count III and which established a *prima facie* case of conspiracy, thereby making certain hearsay statements admissible. An examination of that independent evidence reveals that it was sufficiently distinct from the hearsay testimony and probative of the substantive offense to avoid the prejudice which concerned the *Lucido* court.

The defendant again seeks to challenge this Court's denial of a sever-

ance of counts, see *United States v. Papia*, 399 F.Supp. 1381 (E.D.Wis.1975), by arguing that the joinder of a conspiracy count with substantive counts prevented a fair trial on each count of the indictment. Ordering a severance of counts is discretionary with the trial court and is to be reviewed on the state of the record at the time of the motion and not after trial. *United States v. Pacente*, 503 F.2d 543 (7th Cir. 1974) (en banc), cert. denied, 419 U.S. 1048, 95 S.Ct. 623, 42 L.Ed.2d 642 (1974); *United States v. Rogers*, 475 F.2d 821, 828 (7th Cir. 1973). Thus, it would be sufficient for the Court to rely on its earlier opinion on this point to dispose of it. See *United States v. Papia*, 399 F.Supp. 1381 (E.D. Wis.1975). Yet even with the benefit of hindsight, it cannot be said that joinder prevented the evidence from being fairly considered. The jury was painstakingly instructed on the use of the hearsay testimony, and was reminded both by the Court orally and by use of separate verdicts that each count was to be considered separately on the evidence relating to that count. Its deliberations were aided by the rereading of the Court's instructions and the testimony of Richard Schmitz. The proof was distinct with respect to each count. There is nothing to suggest that defendant Papia did not receive fair consideration on each count. See *United States v. Pacente*, supra; *Opper v. United States*, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954); *United States v. Buschman*, 386 F.Supp. 822 (E.D.Wis.1975). In *Schaffer v. United States*, 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960), the Supreme Court affirmed convictions of substantive violations even though a conspiracy count was dismissed by the trial judge at the close of the Government's case. Evidence pertaining to the conspiracy had been admitted. The Court, in rejecting the argument that prejudice is implicit in continuing the joint trial after dismissal of the conspiracy, refused to "fashion a hard-and-fast formula that, when a conspiracy count fails, joinder is error as a matter of law." 362 U.S. at 516, 80 S.Ct. at 948, 4 L.Ed.2d at 925.

Although the Court in *Schaffer* was concerned with severance of defendants and not severance of counts, its conclusion that no impermissible prejudice resulted to the defendant is applicable here. Indeed, the potential for prejudice was much greater in *Schaffer*, where the Government introduced evidence on the conspiracy count which was not even allowed to go to the jury, than in the present case where the conspiracy count not only was submitted to the jury but where three defendants were convicted by the jury on that count. As Justice Douglas observed in his dissent in *Schaffer*:

"This is unlike the case where the conspiracy count and the substantive counts are submitted to the jury, the verdict being not guilty of conspiracy but guilty on the other counts. There is then no escape from the quandary in which defendants find themselves. Once the conspiracy is supported by evidence, it presents issues for the jury to decide. What may motivate a particular jury in returning a verdict of not guilty on the conspiracy count may never be known." 362 U.S. at 523–524, 80 S.Ct. at 952, 14 L.Ed.2d at 929.

■ Defendant's similar argument that the mere admission of hearsay testimony on Count I requires a new trial on Count III cannot prevail. The admissibility of such evidence is a question for the judge, not the jury, to determine, and a jury verdict of acquittal "does not retroactively render inadmissible the hearsay which was allowed into evidence under the declaration of the co-conspirators exception to the hearsay rule." *United States v. Kohne*, 358 F.Supp. 1053, 1059 (W.D.Pa.1973), affirmed, 3 Cir., 485 F.2d 682 (1973). See also *United States v. Zane*, 495 F.2d 683, 692 (2d Cir. 1974). Here, the hearsay testimony was provisionally admitted into evidence upon the Government's representation that existence of the conspiracy would be established by credible independent evidence, and the jury was so instructed. Ultimately the Government did make

such a showing and the evidence was formally received. Regardless of the obvious prejudicial effect which would have been presented had the Government failed to introduce sufficient independent evidence, the Government is entitled to proceed in this fashion in order to put on its proof logically and coherently. Once the testimony is received, a subsequent jury determination that guilt beyond a reasonable doubt was not established does not undermine the propriety of the judge's evidentiary ruling. *United States v. Kohne*, supra.

Defendant's reliance on *United States v. Yow*, 8 Cir., 465 F.2d 1328 (1972), is unpersuasive. In *Yow*, the Court held that it was error to admit hearsay statements under the coconspirator exception to the hearsay rule where the statements were made *after* the objectives of the concert of action were achieved. In the present case, the Court explicitly found at trial that these statements in question were made during the pendency and in furtherance of the conspiracy. The evidence was, therefore, properly introduced before the jury which carefully ascertained the culpability of each defendant on each count of the indictment. Defendant's right to have inadmissible hearsay excluded from the Government's case was scrupulously guarded throughout the trial. The evidentiary problems inherent in a prosecution on both conspiracy and substantive counts have perplexed, and undoubtedly will continue to perplex, members of the bar and lay persons of the jury. Nevertheless, the Court is convinced that the testimony in question here was properly admissible and did not, by its admission, prevent the jury from fairly considering each de-

fendant and each count of the indictment.

Finally, the defendant Papia has asserted that the Court made errors in its instructions which require the verdict to be set aside and a new trial granted. Specifically, it is argued that certain instructions given by the Court during trial were fatally incomplete, and that an instruction requested by the defendant to be given in the final charge was improperly denied. These contentions will be taken up in turn.

Defendant's initial argument relates to the instruction given by the Court at the close of the Government's case to the effect that hearsay statements preliminarily admitted up to that point were, in fact, admissible and could be considered by the jury against all defendants whether or not each was present when the conversations took place. (Transcript, pp. 2588–2589.) Defendant's position is that this instruction, standing alone, highlighted the hearsay aspect of the Government's case impermissibly, and should have been accompanied by a full set of instructions stating all relevant principles by which jury deliberations are to be guided. Moreover, defendant maintains that it was error for the Court not to instruct the jury that this evidence was admitted only as to the conspiracy count.[4]

The Court finds no merit in these arguments. At the time the instruction in question was given, the jury was acutely aware that hearsay declarations had been *provisionally* admitted throughout the Government's proof, and that the Court was to rule on their ultimate admissibility. In essence, the instruction

---

4. The instruction in question here was given as follows:

"Ladies and gentlemen of the jury, throughout the trial, many objections have been made and properly so, to admission of certain evidence on the grounds of evidence is hearsay and I have preliminarily admitted that evidence, waiting to the point in trial where I can rule on its admissibility or not. And I wish to advise you that the testimony relating to acts

and conversations and statements by the alleged co-conspirators and the defendants outside the presence of the other defendants is admissible and may be considered by you against all the defendants.

"Whether or not each was present when the act was done or such conversations were had or the statements were made." Transcript, pp. 2588–2589.

was nothing more than this final evidentiary ruling. Nothing in the instruction tended to unduly underscore the importance of the hearsay aspect in the Government's proof as compared with the other evidence adduced. Nor was there the suggestion that the Court had found that an unlawful conspiracy did exist and that each defendant was a member of it. The giving of a full set of instructions at that time addressed to elements of the offense, credibility of witnesses, and like matters was unnecessary and would have needlessly disrupted the trial.

Nor was the instruction erroneous in that it failed to limit the applicability of the hearsay testimony to the conspiracy count. To the contrary, evidence of a conspiracy may be used by the Government to prove participation in a substantive crime, whether or not conspiracy itself is included in the indictment. In *United States v. Hoffa,* 349 F.2d 20 (6th Cir. 1965), affirmed 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), the Court was faced with objections to a similar instruction concerning evidence of a conspiracy. Since the conspiracy count against Hoffa and the other defendants had been *severed* before trial, the only reason for admitting the hearsay evidence coming within the coconspirator exception was as evidence on the substantive counts. Thus, the argument urged here was squarely presented in *Hoffa,* and the Court unequivocally held that "conspiracy may be shown as an evidentiary fact to prove participation in the substantive crime. [Citation omitted]" 349 F.2d at 41. The holding in *Hoffa* controls here where both the substantive and conspiracy counts went to the jury. The hearsay testimony was relevant not only to show membership in the alleged conspiracy but also to demonstrate the defendant's state of mind and the existence of some sort of scheme or plan at the time of the events alleged in Count III. Defendant's arguments are therefore rejected.

■ The same point is raised by defendant's other contention that it was error for the Court to refuse to instruct the jury that events occurring after October 21, 1974, could not be considered as to Count III.[5] Such evidence was admissible with respect to the substantive crime alleged and the credibility of Government witness Schmitz, which credibility was put into issue by the defense and which the Government was entitled to rehabilitate with rebuttal testimony.[6] *United States v. Hoffa,* supra; *United States v. Marchesani,* 457 F.2d 1291 (6th Cir. 1972). Thus, all of defendant Papia's motions are without merit and are denied.

## DEFENDANT ENEA

The defendant Enea, who was named and subsequently convicted on Count I, has also moved for a judgment of acquittal or, in the alternative, for a new trial. In support of his motions, the defendant contends explicitly that it was error for the Court not to sever Enea from the other defendants, and that various hearsay statements were improperly admitted into evidence. The Court must reject all these arguments.

The matter of severance was fully considered before and during trial. Defendant's conclusory assertion now that failure to sever prevented him from receiving a fair trial is no more convincing than it was before trial had commenced.

---

**5.** The requested instruction provided as follows:

"You are instructed that Count 3 alleges a completed crime on October 21, 1974, and events which occurred after that date cannot be considered by you in determining whether or not the Government has proved beyond a reasonable doubt that Mrs. Papia used extortionate means in her conversation with witnesses." (Defendant Papia's brief, p. 11.)

**6.** The defense called Mr. Schmitz's credibility into question at trial by raising doubt as to his motive for going under federal witness protection in the spring of 1975. Events subsequent to October 21, 1974, were introduced by the Government in rebuttal to establish Schmitz's state of mind during that spring.

See *United States v. Papia,* 399 F.Supp. 1381 (E.D.Wis.1975).

 Defendant Enea also contends that certain statements were erroneously admitted under Rule 801(d)(2)(E) since they took place after February 14, 1975, the date on which one of the unindicted coconspirators was arrested, and invokes as authority *Krulewitch v. United States,* 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949). The Court disagrees that the conspiracy terminated on that day. Although authorities were using law enforcement and investigatory methods to follow up on information they had been given, the fact that law enforcement authorities have begun to investigate, or even that arrests have been made, does not mean that a conspiracy has ceased. The question is one of fact for the Court to determine in applying Rule 801(d)(2)(E), and the evidence demonstrated that the conspiracy was still viable after February 14, 1975, with respect to the defendants in this case. Therefore, defendant's argument is unavailing.

 Defendant also maintains that the admission of statements of his coconspirators which were not hearsay by virtue of Rule 801(d)(2)(E) nevertheless violated his Sixth Amendment right to confront his accusers. The Court cannot agree. It is true that the hearsay rule and the confrontation clause are not congruent in scope, even though they protect similar values. *California v. Green,* 399 U.S. 149, 155–156, 90 S.Ct. 1930, 1933, 26 L.Ed.2d 489, 495 (1970). The coconspirator exception to the hearsay rule has, however, been held not to infringe upon the constitutional right of confrontation on the ground that the Sixth Amendment embraces limitations and exceptions just as does the hearsay rule itself. *Douglas v. Alabama,* 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934, 937 (1965); *Pointer v. Texas,* 380 U.S. 400, 407, 85 S.Ct. 1065, 1069, 13 L.Ed.2d 923, 928 (1965). See also *Snyder v. Massachusetts,* 291 U.S. 97, 107, 54 S.Ct. 330, 333, 78 L.Ed. 674, 678

(1934); *Kirby v. United States,* 174 U.S. 47, 61, 19 S.Ct. 574, 579, 43 L.Ed. 890, 896 (1899); *Mattox v. United States,* 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895). Cf. *California v. Green,* supra.

In *Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970), the Supreme Court upheld the use as substantive evidence at trial of a statement made by an alleged coconspirator of the defendant, even though the coconspirator was not a codefendant but was not produced at trial as the prosecution could have done. Four justices agreed that classic courtroom cross-examination is but one way of complying with the confrontation clause, and where the mission of the Sixth Amendment is served, the requirement is satisfied. *Dutton v. Evans,* supra, at 86–89, 91 S.Ct. at 218, 27 L.Ed.2d at 225. That mission has been articulated to be "to advance a practical concern for the accuracy of the truth-determining process in criminal trials by assuring that 'the trier of fact [has] a satisfactory basis for evaluating the truth of the prior statement.' *California v. Green,* 399 U.S., at 161, 90 S.Ct., at 1936. * * *" *Dutton v. Evans,* supra, at 89, 91 S.Ct. at 220, 27 L.Ed.2d at 227. Thus, the thrust of the cases in this area is that before such statements are admitted, the law requires them to be surrounded by sufficient indicia of reliability traditionally viewed as determinative of whether an out-of-court statement may be offered for its truth though there is no confrontation of the declarant. *Id.*

In this case there is no doubt that the jury heard accurately the out-of-court statements, since the great majority of them were recorded and the tapes were played at trial. The unindicted coconspirator who aided in the taping was a party to the conversations in question and identified the voices for the jury, took the stand at trial, and was subject to exhaustive cross-examination. Moreover, all but one of the defendants/declarants also took the stand at trial and offered various theories of interpretation for the language in the conversations.

The statements of defendant Adonnis, who did not take the stand at trial, cannot by themselves be said to be so "crucial" or "devastating," compare *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), with *Dutton v. Evans,* supra, as to violate the constitutional rights of the defendants, even though these statements also are surrounded by a legally sufficient indication that they are reliable. Thus, there was no violation of the Sixth Amendment right of confrontation here. *California v. Green,* supra; *Dutton v. Evans,* supra.[7]

## DEFENDANT ADONNIS

The defendant Max Adonnis has similarly moved for a judgment of acquittal or, in the alternative, a new trial. In support of his position, this defendant has raised many of the same arguments which his codefendants have relied upon. Without repeating the discussion set forth above, the Court again holds that they are without merit.

 In addition, defendant's counsel has raised the argument that the taped conversations were inadmissible, since they were obtained with the aid of a one-time member of the conspiracy who had secretly begun to cooperate with the Government. At its base, defendant's position is that the Government used its own agent to obtain conversations later admitted into evidence, and that they should not be allowed to accomplish by subterfuge what they could not achieve directly.

Even assuming the defendant is correct in his characterization, the Court must reject the proposition being advanced. The law enforcement techniques used in the development of this case by the Government are common and have gained the express approval of the courts when challenged. As the Supreme Court has stated on at least one occasion:

" * * * The history of criminal trials shows numerous cases of prosecutions of oathbound conspiracies for murder, robbery, and other crimes, where officers of the law have disguised themselves and joined the organizations, taken the oaths, and given themselves every appearance of active members engaged in the promotion of crime for the purpose of securing evidence. Evidence secured by such means has always been received." *Olmstead v. United States,* 277 U.S. 438, 468, 48 S.Ct. 564, 569, 72 L.Ed. 944, 952 (1928).

In *United States v. Hoffa,* 349 F.2d 20 (6th Cir. 1965), affirmed 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), the court of appeals confronted the contention that evidence against the defendant was obtained by a surreptitious police effort that allegedly involved fraud and artifice. Indeed, the prosecution there did make extensive use of an informant in building its case, and the Court had no trouble in approving the receipt of such evidence. *Id.,* at 36–38. The rule is that the Government may not plant an informant in the defense camp to intercept communications between a defendant and his attorney, since this would deny the right to effective assistance of counsel, see, e. g., *Caldwell v. United States,* 92 U.S.App.D.C. 355, 205 F.2d 879 (1953), cert. denied, 349 U.S. 930, 75 S.Ct. 773, 99 L.Ed. 1260 (1955); *Coplon v. United States,* 89 U.S.App.D.C. 103, 191 F.2d 749 (1951), cert. denied, 342 U.S. 926, 72 S.Ct. 363, 96 L.Ed. 690 (1952), but evidence obtained even on false pretenses by one cooperating with the Government is admissible. *Lopez v. United States,* 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963); *United*

---

**7.** In this connection, the Court notes that defendant's reliance on *Bruton v. United States* is wholly misplaced since that case dealt with a hearsay statement inculpating a codefendant where that statement was *"clearly inadmissible"* against that codefendant under "traditional rules of evidence." *Bruton v. United States,* 391 U.S. 123, 128 n. 3, 88 S.Ct. 1620, 1623, 20 L.Ed.2d 476, 480 (1968) (emphasis added). In the instant case, we have the opposite situation.

*States v. Hoffa,* supra, at 38. Here there is not even a colorable claim that defendant's right to counsel has been infringed. Therefore, defendant's argument is unpersuasive.

## DEFENDANT BASILE

Finally, the defendant Joseph Basile has filed motions identical to those of his codefendants. In support thereof, he has raised many of the points dealt with earlier. The theory of argument, and the Court's views thereon, will not be repeated here.

■ The defendant Basile additionally asserts that it was error for the Court to instruct the jury that they may find multiple conspiracies from the evidence presented at trial, since, it is asserted, there was no evidence which linked Basile with what may be considered the "second" conspiracy. The Court finds ample evidence in the record to tie the defendant to, first, the burning of a restaurant and, second, the employment of thugs to do physical harm to Kurt Amidzich. Thus, whether the activities in question are considered a single conspiracy or separate conspiracies, the defendant was certainly not prejudiced, and the instruction was not error. Defendant's reliance on *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), which held that it was error for a trial court to *refuse* to give a multiple conspiracy instruction where the evidence could not possibly have supported finding a *single* conspiracy, is certainly not controlling here. Defendant's argument is therefore rejected.

The Court did carefully and fully consider the numerous objections and motions of the defendants before trial, during trial, and in these post-trial motions. Those points not specifically dealt with above are impliedly found to be without merit.

IT IS THEREFORE ORDERED that the post-trial motions of defendants Sally A. Papia, Russell J. Enea, Maxmillion J. Adonnis, and Joseph V. Basile for judgment of acquittal or, in the alternative, for a new trial be and they hereby are denied.