UNITED STATES of America,
Plaintiff-Appellee,

v.

John CRAIG, Defendant-Appellant.

No. 75–1013.

United States Court of Appeals,
Sixth Circuit.

Argued June 12, 1975.

Decided Sept. 23, 1975.

Joe A. Dycus, Asst. Federal Public Defender, Memphis, Tenn., Travis Buckley, Laurel, Miss., for defendant-appellant.

Thomas F. Turley, Jr., U. S. Atty., W. Hichman Ewing, Jr., Asst. U. S. Atty., Memphis, Tenn., for plaintiff-appellee.

Before WEICK, MILLER and ENGEL, Circuit Judges.

WILLIAM E. MILLER, Circuit Judge.

This appeal is from a jury conviction on a forty-eight count indictment charging defendant with possession of controlled substances with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Defendant was sentenced to ten years' imprisonment.

The relevant facts may be summarized as follows. One Davis, agreeing to cooperate with the government in an undercover capacity after his arrest on a stolen securities charge, was assigned to occupy a rented apartment in Memphis, Tennessee. The apartment was equipped with electronic monitoring devices installed in the telephone and at other places in the apartment.

Davis established contact, through a series of meetings, with one Paul Patterson who was subsequently a co-defendant with defendant Craig. The initial purpose of this contact was to attempt to obtain counterfeit currency from Patterson, at the request of the Secret Service. In the course of these meetings it was learned that Patterson claimed to be able to supply drugs. Davis then began attempts, in cooperation with federal narcotics agents, to negotiate a drug purchase from Patterson. At one point in the negotiations Davis visited Patterson's farm in Oxford, Mississippi, where he was shown a room in which a number of persons were present and a large quantity of narcotics was displayed. On this occasion, Davis talked with an unidentified man concealed behind a curtain in the room and armed with a shotgun. Later, an agreement was reached for a purchase of narcotics which Patterson was to deliver to Davis' apartment in Memphis.

At the appointed time, Patterson arrived at Davis' apartment in defendant Craig's pick-up truck. Craig remained in the truck as Patterson carried a closed box containing drugs into the apartment. Federal agents in the apartment, posing as buyers, opened the box of drugs. They then transmitted a prearranged signal to other agents in cars stationed near the apartment. When these officers in their unmarked vehicles moved toward the apartment, Craig suddenly departed the scene in the truck at a high rate of speed. In the process, he almost lost control of the truck, striking another truck and finally making his escape on foot when his vehicle became mired in mud. Approximately two years later, he was apprehended at his parents' home in Mississippi. Until the encounter at Davis' apartment, the federal agents had never seen Craig nor had his name been mentioned in the presence of Davis or the federal agents.

Both Craig and Patterson were indicted for illegal possession of a controlled substance with intent to distribute. The indictment contained no charge of conspiracy between Patterson and Craig. Patterson pleaded guilty and Craig not guilty. Craig did not testify at his own trial nor offer any proof. While Patterson did not testify at Craig's trial, numerous accounts by Davis and other witnesses of statements made by Patterson were admitted in evidence, over defendant's objections, under the co-conspirator exception to the hearsay rule.[1] The court instructed the jury, when such objections were made and in its final

---

1. The hearsay consisted of Patterson's statements related to Davis about his own criminal activities, showing that Patterson was acting with other persons for whom he was probably a middleman in the sale of drugs. The statements, however, did not identify Craig as one of those with whom Patterson was associated.

charge, that it must first find, from independent evidence, that a conspiracy existed between Patterson and Craig before it could consider the hearsay testimony of Davis and others concerning Patterson's statements. At the close of the government's case, defendant moved for a directed verdict, and, in the alternative, for a mistrial on the ground that no conspiracy had been proved and that he had been denied a fair trial as a result of the admission of hearsay evidence. Both motions were denied. The jury returned a verdict of guilty on all counts.

While defendant raises a number of issues on appeal, the most critical assignments of error are that the court erred in admitting testimony of Patterson's extrajudicial statements and that there was insufficient competent evidence to convict Craig.

■ Under the co-conspirator exception to the hearsay rule, accounts of extrajudicial statements may be admitted if it is established by evidence other than hearsay that the defendant was involved in a criminal conspiracy with the declarant, *Hitchman Coal and Coke Co. v. Mitchell*, 245 U.S. 229, 38 S.Ct. 65, 62 L.Ed. 260 (1917); *United States v. Talbot*, 470 F.2d 158 (6th Cir. 1972), whether or not the indictment contains a formal conspiracy count. *United States v. Townes*, 512 F.2d 1057 (6th Cir. 1975); *United States v. Perna*, 491 F.2d 253 (6th Cir.), *cert. denied*, 417 U.S. 934, 94 S.Ct. 2646, 41 L.Ed.2d 237 (1974); *United States v. Talbot*, 470 F.2d 158 (6th Cir. 1972).

■ To permit consideration of hearsay, there must be sufficient independent evidence apart from the hearsay to establish a conspiracy or joint criminal venture between the declarant and the defendant.[2] *United States v. Townes*, 512 F.2d 1057 (6th Cir. 1975); *United States v. Oliva*, 497 F.2d 130 (5th Cir. 1974); *United States v. Perna*, 491 F.2d 253 (6th Cir.), *cert. denied*, 417 U.S. 934, 94 S.Ct. 2646, 41 L.Ed.2d 237 (1974); *United States v. Lucido*, 486 F.2d 868 (6th Cir. 1973); *United States v. Talbot*, 470 F.2d 158 (6th Cir. 1972).

■ A careful examination of the record fails to convince us that there was sufficient evidence from which the jury could have found that a conspiracy or joint criminal venture existed between Patterson and Craig. The only independent evidence presented was that Craig drove Patterson with the closed box of drugs to Davis' apartment in Craig's truck; that Craig fled when agents began to move toward the apartment, later abandoning his truck in which a shotgun was found; and that Craig successfully eluded police for about two years. At most, this evidence would support a finding of an overt act. Such an act, without proof of agreement among the parties, is not enough to establish a conspiracy. *United States v. Williams*, 503 F.2d 50 (6th Cir. 1974).

■ Since we have concluded that there was insufficient evidence of the existence of a conspiracy or joint venture, the jury could not appropriately, in finding Craig guilty, have considered hearsay statements of Patterson. The evidence against Craig consists almost exclusively of his presence in the truck at Davis' apartment, the circumstances of his flight and apprehension, and the presence of a shotgun in his car. This evidence is in our view quite insufficient to support either a conviction for illegal possession of drugs or aiding and abetting in their possession. It would be highly conjectural and speculative indeed

---

2. The analysis is the same whether the concerted activity is referred to as a "joint criminal venture" or a "conspiracy," although the term "joint venture" may be more appropriate when there is no formal conspiracy charge in the indictment. *United States v. Lucido*, 486 F.2d 868, 869 n. 3 (6th Cir. 1973).

to conclude from these facts that Craig had knowledge of the presence of drugs in the closed box or that the shotgun found in his car was the same shotgun held by the person behind the curtain.

■■ We recognize that the "possession" necessary for conviction of this offense may be constructive as well as actual. Yet constructive possession requires that a person knowingly have "the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *United States v. Craven,* 478 F.2d 1329, 1333 (6th Cir. 1973). Here there is no showing that Craig had the intent to exercise control over the drugs or that he had the knowledge necessary for conviction of illegal possession.

■ Defendant's flight and his successful attempts to elude police are the strongest items of evidence against him. Flight is generally admissible as evidence of guilt. *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896); *United States v. Greiser,* 502 F.2d 1295 (9th Cir. 1974); *United States v. Malizia,* 503 F.2d 578 (2d Cir. 1974). The trier of the facts, however, must determine how much weight should be given to such evidence. Evidence of this character is frequently of little probative value. *See Wong Sun v. United States,* 371 U.S. 471, 483 n. 10, 83 S.Ct. 407, 9 L.Ed.2d 441 (1962); *Alberty v. United States,* 162 U. S. 499, 511, 16 S.Ct. 864, 40 L.Ed. 1051 (1896); *Vick v. United States,* 216 F.2d 228, 233 (5th Cir. 1954).

Defendant Craig doubtless had serious objections to police apprehension as indicated by his desperate efforts to elude them. The weakness in the government's case is that there is nothing to link Craig's flight from the police with possession of drugs. Lacking proof of intent and knowledge, elements required to support conviction on the specific charge of illegal possession of a controlled substance, the government's case must fail.

Because of our holding on the insufficiency of the evidence, we find it unnecessary to consider the other questions presented for review.

Reversed.