IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 13, 2003

## STATE OF TENNESSEE v. MIKEL ULYSEES PRIMM

**Appeal from the Circuit Court for Dickson County**
**No. CR5454    Allen W. Wallace, Judge**

---

**No. M2002-01889-CCA-R3-CD - Filed December 30, 2003**

---

The defendant, Mikel Ulysees Primm, was convicted of speeding, simple possession of cocaine, simple possession of marijuana, possession of drug paraphernalia, and criminal impersonation. The trial court imposed a sentence of 30 days for the speeding offense, 11 months and 29 days on each of the three possession offenses, and six months for the criminal impersonation offense. The sentence for criminal impersonation is to be served consecutively to the sentence for simple possession of cocaine. The remaining sentences are to be served concurrently to the sentence for simple possession of cocaine and to each other. In this appeal of right, the defendant argues that the trial court provided erroneous instructions to the jury as to the definition of constructive possession. The judgments are affirmed.

**Tenn. R. App. P. 3; Judgments of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which DAVID G. HAYES and JERRY L. SMITH, JJ., joined.

Kenneth Quillen, Nashville, Tennessee, for the appellant, Mikel Ulysees Primm.

Paul G. Summers, Attorney General & Reporter; Helena Walton Yarbrough, Assistant Attorney General; and Suzanne Lockert, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

At approximately 4:00 P.M. on May 6, 2000, Trooper Vincent Turocy with the Tennessee Highway Patrol stopped a white Lincoln Town Car on Highway 96 in Dickson County for driving 65 mph in a 50 mph zone. When Trooper Turocy activated his blue lights and siren, the driver of the Lincoln did not immediately stop, but turned onto another roadway. Trooper Turocy recalled that as he followed the vehicle, he saw the passenger, Frank Grundy, reach underneath the seat of the vehicle and the driver slump so that his shoulders and arms were not visible. When confronted by

the trooper, the defendant, who was driving, initially identified himself as James Edmondson and claimed to have left his operator's license at his residence. Upon returning to his patrol car and checking the information provided by the defendant, Trooper Turocy learned that no operator's license had been issued in the name of James Edmondson. When questioned further as to his identity, the defendant claimed to be an illegal alien. Officers later discovered the defendant's wallet in Grundy's possession.

Trooper Mark Proctor arrived at the scene and, after observing Grundy reach under the seat, directed both the defendant and Grundy to step out of the vehicle. After the defendant consented to a search of the vehicle, officers discovered a bag containing 2.5 grams of marijuana and 3.5 grams of cocaine underneath the passenger's seat. The defendant, who had rolling papers and an empty plastic baggie in his possession, claimed that the illegal drugs belonged to Grundy. A records check established that the vehicle was registered in the name of Delia Harmon and an identification card belonging to Orlando Harmon was found above the visor on the driver's side.

At trial, Grundy, a state witness, testified that the defendant had purchased marijuana and cocaine in Nashville earlier in the day. He explained that before the arrest, the defendant had asked him to hold his wallet. Grundy claimed that the defendant panicked when he heard the siren and threw the drugs into the passenger's side of the vehicle. According to Grundy, the defendant did not immediately stop after hearing the siren, giving Grundy time to put the drugs under the seat and out of the sight of the arresting officer. Grundy acknowledged that a crack cocaine pipe, which was found in close proximity to the illegal drugs, belonged to him. The defendant presented no proof.

In this appeal, the defendant argues that the trial court erred by providing a "very limited" instruction on constructive possession. The defendant submits that the following instruction was inadequate:

> A person who, although not in actual possession, knowingly has both the power and intention at any given time to exercise dominion and control over an object is then in constructive possession of it.
> The law also recognizes that possession may be sole or joint. If one person alone has actual or constructive possession of a thing, possession is sole. If two or more persons have actual or constructive possession of a thing, their possession is joint.

Citing State v. Transou, 928 S.W.2d 949, 955 (Tenn. Crim. App. 1996), he argues that the trial court should have provided the following additional instructions:

> Before a person can be found to constructively possess a drug, it must appear that the person has "the power and intention at a given time to exercise dominion and control over . . . [the drugs] either directly or through others." In other words, "constructive possession is the ability to reduce an object to actual possession." The mere presence of a person in an area where drugs are discovered is not, alone, sufficient to support

a finding that the person possessed the drugs. Likewise, mere association with a person who does in fact control the drugs or property where the drugs are discovered is insufficient to support a finding that the person possesses the drugs.

The defendant claims that had the jury been instructed on "mere presence," he would have been acquitted. The state submits that the instruction provided by the trial court was adequate because the proof established that the defendant was not merely present, but that the drugs actually belonged to the defendant.

The trial court has a duty "to give a complete charge of the law applicable to the facts of a case." State v. Harbison, 704 S.W.2d 314, 319 (Tenn. 1986); see also Tenn. R. Crim. P. 30. "[The] defendant has a constitutional right to a correct and complete charge of the law." State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990). Our law requires that all of the elements of each offense be described and defined in connection with that offense. See State v. Cravens, 764 S.W.2d 754, 756 (Tenn. 1989). Jury instructions must, however, be reviewed in the context of the overall charge rather than in isolation. See Sandstrom v. Montana, 442 U.S. 510 (1979); see also State v. Phipps, 883 S.W.2d 138, 142 (Tenn. Crim. App. 1994). A charge is prejudicial error "if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." State v. Hodges, 944 S.W.2d 346, 352 (Tenn. 1997).

This court described constructive possession as follows:

"Constructive possession requires that a person knowingly have 'the power and the intention at a given time to exercise dominion and control over an object, either directly or through others.'" United States v. Craig, 522 F.2d 29 (6th Cir. 1975). "In essence, constructive possession is the ability to reduce an object to actual possession." United States v. Martinez, 588 F.2d 495 (5th Cir. 1979).

State v. Williams, 623 S.W.2d 121, 125 (Tenn. Crim. App. 1981). Additionally, "[t]he mere presence of a person in an area where drugs are discovered is not, alone, sufficient to support a finding that the person possessed the drugs." State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). Similarly, "mere association with a person who does in fact control the drugs or property where the drugs are discovered is insufficient to support a finding that the person possessed the drugs." Id.

Here, the trial court's instruction on constructive possession was an accurate statement of the law. The proof at trial established that the defendant was not only present where the drugs were discovered, but had purchased the drugs and later thrown them into the passenger's side of the vehicle to avoid their detection by law enforcement. That there was a console between the driver's seat and the passenger's seat was of little benefit to the defendant. There was sufficient evidence from which the jury could have determined that the defendant was, at some point, in actual possession of the drugs. Under these circumstances, any error by the failure of the trial judge to instruct the jury on mere presence qualifies as harmless beyond a reasonable doubt.

-3-

Accordingly, the judgments are affirmed.

_____
GARY R. WADE, PRESIDING JUDGE

-4-